# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### NEW ALBANY DIVISION

TIMOTHY L. STARK, an individual; and
WILDLIFE IN NEED and WILDLIFE IN DEED, INC.,
an Indiana Corporation
Plaintiffs,

v.

MIKE YOUNG, THE ACTING UNITED
STATES SECRETARY OF
AGRICULTURE, and UNITED
STATES DEPARTMENT OF
AGRICULTURE,
Defendants.

CIVIL ACTION FILE NO. 4:17-cv-57

## VERIFIED COMPLAINT FOR EQUITABLE RELIEF

**COME NOW,** Timothy L. Stark, personally, and Wildlife In Need and Wildlife In

Deed, Inc., by it's duly authorized representative (Collectively hereinafter referred to as

Plaintiffs), Plaintiffs in the above-styled action, and file this, their Verified Complaint for

Equitable Relief (the "Complaint") against Mike Young, Acting United States Secretary

of Agriculture and the United States Department of Agriculture (the "USDA"), and, in

support thereof, show this Court as follows:

**INTRODUCTION AND NATURE OF ACTION**

1. This is an action under the Administrative Procedure Act (APA), the Animal

    Welfare Act (AWA) and the United States Constitution against the

    Defendants for their failure to afford due process to those affected by its

deprivation of property while acting under the color of federal law, for its failure to abide by its own rules, regulations, and procedures related to the AWA, and for acting contrary to and in excess of the authority delegated to it by Congress.

2. The USDA knowingly engaged in a scheme to disparage the reputation and name of the Plaintiffs herein and to attempt to cause the Plaintiffs irreparable financial harm and to ultimately cause them to lose their license which was issued them under the Animal Welfare Act.

3. The Animal Welfare Act (P.L. 89-544) was signed into law on August 24, 1966 by President Lyndon B. Johnson and it is the only Federal law that regulates the treatment of animals in exhibition.

4. The USDA and Animal and Plant Health Inspection Services (APHIS) oversee the AWA and are responsible for upholding and enforcing the law.

5. The Plaintiffs are the holders of a license #32-C-0204 under the AWA which affords them the right to display and exhibit animals covered by the AWA.

6. License holders are subject to routine inspections.

7. One such inspection took place on March 17, 2017 and this inspection was labeled a "Routine Inspection" by the USDA.

8. That the Inspectors were accompanied by armed security personnel over the

objection of the Plaintiffs.

9. That sometime after the inspection, the Inspectors and other USDA employees and agents conducted a phone conference with the Plaintiffs wherein the inspection report was discussed at length and point by point with both parties having a draft copy in their possession.

10. That even though most of the inspection report was challenged as to accuracy and numerous questions were raised by the Plaintiffs about much of the contents therein, the inspection report was ultimately finalized with apparently little or no regard given to the issues raised by the Plaintiffs.

11. That the Plaintiffs addressed each of the items in the Final Inspection Report (See attached Exhibit "A") in a timely fashion and sent a series of emails to the primary inspector with USDA documenting their efforts with photos over the next several days.

12. Each item on the inspection report has a "correct by" date.

13. Each item was corrected within the time-frame specified.

14. That on the evening of Friday, March 24, 2017 at 7:45 p.m., an email was sent to Counsel for the Plaintiffs and a Courtesy Copy to the Plaintiffs with a letter attached that the Plaintiff's license was suspended for a 21 day period effective immediately. (See attached Exhibit "B")

15. That Counsel for the Plaintiffs attempted to negotiate a different outcome

or at least a delay in order for this to be reviewed and was summarily and soundly rejected.

16. That 21 days is the maximum suspension period the USDA may impose on a license.

17. That in the phone conference on the Inspection Report, there were numerous queries raised asking the USDA to provide precise guidance on engineering standards and quantifiable standards that have been reduced to writing in some legal format and repeatedly the Plaintiffs were told that there were no such standards in existence, rather it was a matter of being a matter of opinion.

18. That when the Plaintiff attempted to correct or inform the inspectors as to errors in judgment made by them or oversights committed by them, he was ignored.

19. That the letter of March 24, 2017 refers to the alleged violations as willful which is in contradiction to what actually occurred.

20. That the Defendants are believed to have been on the property in response to a complaint as to the condition or treatment of certain baby tigers located there, but rather than state such upon arrival, they operated under the guise of being there for a routine inspection which acted to conceal their true purpose for being there.

21. The presence of visibly armed security personnel accompanying the inspectors coupled with the surreptitious manner in which they conducted themselves had a chilling effect on the communication by and between the Plaintiffs and the inspectors.

22. The Plaintiff, Timothy L. Stark resides on the property and frequently houses many of the animals which are covered under his license in his home.

23. There are areas within his home that are private and secure from inspectors and other members of the public which don't contain animals subject to his license.

24. The inspectors attempted to bully their way into such areas of his home over his objection and generally made the entire environment very tense and hostile.

25. That due to the close bond Mr. Stark has with many of the animals in his care, they can sense the tension he is under and react much like one would expect – erratic and different than normal.

26. That the inspectors incorrectly surmised that animals in the care of the Plaintiff were in distress due to their environment and treatment, wholly ignoring the actual cause – the hostility and presence of the inspectors.

27. The inspectors are present for a small part of the day and refuse to

acknowledge the fluidity of animal care and welfare. For instance, if a primate enclosure is being cleaned or it's contents being cleaned, the environment is temporarily different than it's regular condition such that it might not contain enrichment items if they are being cleaned outside the enclosure.

28. The inspectors also seem oblivious to what environmental factors may play a part in the maintenance of the enclosures. For example, tarps used as shade or shelter are frequently damaged by weather and are routinely replaced. To write up a violation without considering the timing of storms and other environmental factors is utterly ridiculous and onerous.

29. The United States Congress entrusted the promulgation of regulations and the enforcement of the AWA to the USDA. It has become increasingly clear that the USDA has redirected its resources toward eliminating rather than regulating the licensees such as the Plaintiffs.

30. In addition to subjecting violators of the AWA to civil and criminal penalties upon issuance of an administrative complaint by the USDA, the AWA permits the USDA to temporarily suspend licenses for up to 21 days without the opportunity for administrative hearing prior to the suspension being started.

31. The USDA's regulations permit licensee's normal business and revenue

generation to be halted without an opportunity for a hearing prior to disqualification, or an administrative forum in which to contest a suspension.

32. In addition to failing to provide the Plaintiffs with the ability to contest suspensions, the USDA is wrongfully citing the Plaintiffs for violations, many of them deemed to be "repeat violations" which they will then later use in an effort to cause the license to be permanently forfeited by willfully failing to follow its own rules, regulations, policies, and procedures for inspecting facilities. Accordingly, the USDA is in *per se* violation of the Administrate Procedure Act.

33. The USDA is also targeting the Plaintiffs' constitutional rights by misapplying the standards which exist during inspections and by having armed guards accompany their inspectors onto his property and into his private domicile over his objection.

34. In addition to the USDA ignoring its own inspection procedures, the subjective nature of the USDA's current methods of enforcement of the AWA are likely to lead to licensees operating well within the law and up to standards facing enforcement actions to seize the license they operate under which would amount to an unlawful taking.

35. The USDA has seized upon the subjective nature of the inspection process

and is attempting to opinionate as opposed to regulate the business of the Plaintiffs by arbitrarily and capriciously creating violations where none exist.  The USDA is targeting the Plaintiffs, the financial viability of similarly situated licensees, and ultimately the life of the animals held by the Plaintiffs.

36.  The Plaintiff agree that oversight of exhibitors and other licensees is needed, but insist upon fair and equal treatment by the Defendants.

37.  The actions of the Defendants have worked a substantial hardship upon the Plaintiffs by undercutting their ability to successfully fund raise in order to keep their facility open and in business.

38.  The Plaintiffs respectfully request that the Court nullify or reverse the 21 day suspension and do the same for the most recent Inspection Report as well as declare what "due process" requires when the USDA attempts further suspensions or other actions against the license of the Plaintiffs.

39.  Further, this Complaint seeks preliminary and permanent injunctive relief enjoining (1) the USDA's unconstitutional failure to provide licensees with a  prompt and meaningful pre-suspension hearing prior to the issuance of a temporary suspension of a license, (2) the USDA's unconstitutional failure to provide licensees with a prompt and meaningful pre-suspension hearing following the issuance of a temporary suspension, and (3) the USDA's

unfounded findings made possible by the USDA's willful failure to adhere to its own established regulations and procedures, and the confines of the authority delegated to it by Congress.

## THE PARTIES

40. Timothy L. Stark is a resident of Clark County, Indiana, and this District.

41. Wildlife in Need and Wildlife In Deed, Inc., are legally formed entities formed under the laws of the State of Indiana and are doing business in the State of Indiana and are organized and owned primarily by Timothy L. Stark.

42. The USDA is an agency of the federal government within the meaning of 5 U.S.C. § 552(f) and is entrusted with the enforcement of the AWA and the promulgation of rules and regulations thereto. The USDA may be served with process by delivering a copy of the Summons and Complaint to the United States Attorney for the Southern District of Indiana, and by sending a copy of the Summons and Complaint by registered or certified mail to the Attorney General of the United States at Washington, D.C. and the USDA.

43. Mike Young is the acting United States Secretary of Agriculture and as such is the head of the USDA.

44. The USDA includes its component entity Animal and Plant Health Inspection Service ("APHIS"), which is the USDA department tasked with

AWA enforcement. Within APHIS, the Animal Care Division is responsible for enforcing the AWA. Each of these sub-agencies is included in the definition of USDA as used herein.

## JURISDICTION AND VENUE

45. This action arises under the Fifth Amendment of the United States Constitution and the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.*, and relates to the USDA's deprivation of the Plaintiffs' due process rights and its arbitrary enforcement of the AWA and related regulations. Therefore, the Court has federal question jurisdiction over the above-styled action pursuant to 28 U.S.C. § 1331.

46. This Court also maintains subject matter jurisdiction over the above styled action pursuant to 5 U.S.C. § 703 and 7 U.S.C. § 54.

47. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(e), as Timothy L. Stark resides in in this District.

48. Per the AWA, no administrative remedies need be sought before suit can be instituted in this Court, nor are constitutional attacks within the USDA's expertise. Accordingly, jurisdiction and venue are appropriate in this District.

## FACTUAL ALLEGATIONS

### Introduction to the Parties and the AWA Enforcement Hierarchy

49. The USDA is entrusted with the enforcement of the AWA and the promulgation of federal regulations related thereto. The USDA delegated its enforcement of the AWA to its component entity, APHIS.

50. APHIS enforces the AWA and the related USDA regulations through its Veterinary Medical Officers ("VMOs").

51. Inspection Reports are generated at the conclusion of each inspection, but only after the Inspectors have an informal debriefing of sorts to discuss the findings and to review the "draft" Inspection Report with the licensee.

52. It has been the experience of the Plaintiffs that regardless of what occurs during the review of the "draft" Inspection Report, said review is an utter waste of time and an exercise in futility as the "draft" version is never changed in any substantive way whatsoever even when it is clearly erroneous.

53. The AWA can summarily suspend the license on a temporary basis for a period not to exceed 21 days after an inspection for perceived transgressions.

54. Historically, the suspensions start the same day they licensee is notified which affords them no time at all to prepare for or react to the suspension or any way in which to challenge the legitimacy or accuracy thereof.

55. Administrative review of a disqualification only occurs at the USDA's

option and for the purpose of seeking a penalty beyond a temporary suspension such as seeking a permanent termination of the license.

56. That there appears to be no limit to the number of bites at the apple the USDA may have as when they fail to prevail at attempts to permanently terminate the license, they will simply issue additional suspensions with the goal of attempting another termination proceeding.

57. No administrative procedure exists for licensees to initiate a hearing to contest a temporary suspension.

58. The USDA is headed by its Acting Secretary, Mike Young.

59. Secretary Young, in turn, entrusts enforcement of the AWA and the Regulations to APHIS.

60. By failing to apply proper standards to the conduct of the inspections and the reasonableness of the determinations as well as the appropriateness of any sanctions they arbitrarily decide to dole out – the USDA is in violation of the Administrative Procedure Act.

**No Opportunity to be Heard Prior to (or After) Issuing Temporary Suspension**

61. Violations of the AWA may result in civil and criminal penalties, including the USDA permanently revoking a license or refusing to renew it.

62. Civil penalties can be levied at the administrative level. Critically, each of these penalties can only be levied after notice and an opportunity for a

hearing, and they are subject to a right of appeal to judicial review. Due process rights are thereby afforded to licensees prior to the imposition of civil and criminal penalties beyond the temporary suspension of the license.

63. Congress, by way of the AWA, authorized the USDA to adopt procedures for the termination of a license for alleged AWA violations and provided for independent judicial review of those adjudications, neither the AWA nor the USDA regulations provide any type of hearing prior to suspending a licensee, nor do they provide a mechanism by which a license holder can administratively contest the suspension after-the-fact.

64. A suspension becomes the subject of an administrative complaint only at the option of the USDA. If the USDA does not exercise this option, its actions may only be reviewed at the expense of the alleged violator by bringing suit.

65. It is conceded, however, that due process is afforded to alleged violators before the USDA is allowed to levy a civil or criminal penalty beyond this temporary suspension.  The AWA specifically provides in 7 U.S.C. 54 § 2149(a) that any right to a hearing only takes place if the USDA opts to suspend or revoke beyond the 21 days.

66. The inability of licensees to use administrative procedures to contest a temporary suspension or to challenge the results of an Inspection are

particularly problematic because of the USDA's policy of more stringent penalties and enforcement for violations that are deemed to be of a "repeat" nature.

67.  By implementing a temporary suspension without the opportunity for notice or review, the suspension can in effect be as harsh of a sanction as most of the penalties that can result from a formal complaint brought by the USDA with those safeguards and protections built in.

68.  7 U.S.C. 54 § 2149(b) require "notice and opportunity for a hearing" before imposing civil penalties such as a fine or termination of the license.

69.  Yet, 7 U.S.C. 54 § 2149(a) only mandates notice or a hearing if the suspension exceeds 21 days and seemingly allows the USDA to suspend for any period they deem fit, which in effect could allow for multiple 21 day periods none of which would require a hearing or notice.

70.  Accordingly, the only manner a licensee can potentially contest an alleged violation of the AWA is to seek redress in the Courts. However, civil litigation is burdensome, and frequently untimely.

71.  An entity like the one operated by Plaintiffs consumes a vast amount of resources to properly care for the amount of animals entrusted to their care. Any fund raising opportunity that they have is vital to their continued existance and a large amount of resources are at stake.  Baby tigers may

only be exhibited in such a way that maximizes donations for a finite period of time approximating ten weeks.  Any suspension during this period potentially cripples the Plaintiff for a lasting time and works a substantial hardship upon the Plaintiffs beyond what is reasonable and appropriate, even assuming that any sanctions of any kind are warranted.

72.  Individuals facing suspension of a license like in the instant case due to alleged violations that are contested are protected by the due process clause: It is axiomatic that the due process clause of the fifth amendment protects individuals against arbitrary deprivations of liberty or property by the federal government. This includes protection against arbitrary intrusion by the government of one's right to practice a chosen profession. See *Greene v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959). In the present case the appellants clearly face governmental intrusion upon such rights and, therefore, may properly assert the application of due process considerations. *Fleming v. U.S. Dep't of Agric.*, 713 F.2d 179, 183 (6th Cir. 1983).

## The chilling effect of having armed agents present at inspections.

73.  In recent years the Defendants have taken to being accompanied by armed agents who in many cases refuse to identify themselves to the Plaintiffs.

74.  The Plaintiffs do not allow deadly weapons to be carried onto the property

by any members of the public or any visitor unless that person is a uniformed law enforcement personnel there on official business.

75. The Defendants informed the Plaintiffs that his refusal to allow armed people to accompany the inspectors would be tantamount to refusing an inspection.

76. Frequently, these armed agents have been off duty Indiana State Police who are known to the Plaintiff.

77. Most recently, there were multiple armed agents of the Defendants present who refused to identify themselves to the Plaintiffs and by there very demeanor, presence and overbearing conduct did operate to chill the relationship to the point where the tension affected the animals being inspected as well as the responses of the Plaintiffs.

78. These facts raise serious questions as to the USDA's impartiality, and red flags as to the fairness of the inspection process.

## COUNT I
## DECLARATORY JUDGMENT –
## FAILURE TO PROVIDE NOTICE AND A HEARING

79. The Plaintiffs hereby incorporate and re-allege Paragraphs 1 through 78 of this Complaint as if fully set forth herein.

80. Article III of the Constitution, the Administrative Procedure Act, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., permit the Plaintiffs to

bring this claim before this Court.

81.  The Administrative Procedure Act, 5 U.S.C. §§ 702 and 706, waives sovereign immunity for claims seeking equitable relief, and provides an opportunity for judicial review of agency action (or inaction).

82.  The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be deprived of life, liberty, or property without due process of law."

83.  Acting under color of federal law, the USDA is knowingly enforcing the AWA (Copy attached hereto and marked as Exhibit 1) in an arbitrary, capricious, and unconstitutional manner in violation of the Plaintiffs' Fifth Amendment and statutory right to due process and the Administrative Procedure Act.

84.  As set forth above, the USDA does not allow licensees an opportunity for a hearing before or after a suspension to contest the validity of said suspension under the AWA. This deprivation of due process is all the more pronounced because of the USDA's use of repeat violations in such a stern way against licensees. Accordingly, without due process, the Plaintiffs are deprived of the benefit of having a license and all that it entails them to lawfully do with said license, most notably in the short term – to raise funds for proper operation of the facility.

85. Although the AWA would appear to distinguish between subjecting licensees to temporary suspensions and more lasting actions such as terminations or revocations of licenses.

86. The practical result of a temporary suspension is a massive loss of immediate revenue and a permanent damaging of the Plaintiff's reputation in the community which acts to permanently and adversely impact their ability to raise funds and properly operate the facility.

87. If notice and a hearing is required to impose even a relatively minimal fine, certainly the extraordinary injury inflicted by suspending the license warrants a pre-suspension hearing.

88. By utilizing the temporary suspensions, and by taking advantage of the procedural deficiencies associated with the AWA and the USDA's regulations, the USDA is strategically and indefinitely depriving licensees their right to lawfully operate their facility, while circumventing constitutionally mandated due process.

89. The failure to provide a pre-suspension hearing is particularly troubling in light of the subjective nature of VMO inspections and the failure of the USDA to follow its own rules and regulations or to adhere to engineering standards or quantifiable measurable guidelines. The risk of an erroneous suspensions are high, as are the risks of arbitrary and capricious findings by

inspectors.

90.  Neither the AWA's nor the USDA's regulations provide a procedure for a licensee to initiate a challenge to a temporary suspension.

91.  Neither the AWA's nor the USDA's regulations provide any guidelines for what periods of suspension are appropriate for different perceived transgressions and violations, only that 21 days is the maximum time that a suspension may be.

92.  Apparently, the Defendants are under the impression that 21 days is the only permissible suspension period as they don't have a history of issuing any shorter terms below the maximum allowable term afforded them.

93.  Judicial review of USDA actions generally occurs only when the USDA brings an administrative complaint and enters judgment, and then the licensee appeals that judgment to a court of law.

94.  As set forth above, the Plaintiffs maintain an interest in exhibiting animals and other actions their license permits, and that interest is protected by the due process guarantee of the Fifth Amendment.

95.  The failure to provide a hearing contravenes both constitutional and statutory due process.

96.  The failure to provide a pre-suspension hearing regarding temporary suspensions is a constitutional and statutory deprivation of due process as

applied to the Plaintiffs.

97.  There is substantial risk of error in judgment inherent in the inspections performed by VMOs, not only because the opinions are subjective, but because the process is prone to abuse. These risks will result in arbitrary and capricious inspections leading to unwarranted suspensions.

98.  The Plaintiffs are interested parties as that term is used in the Declaratory Judgment Act: they are active holders of a class C license that rescues many animals and educates the public and they have been suspended more than once, without an opportunity for a hearing; and in the absence of this Court's intervention, it is highly likely that the USDA will continue to enforce the AWA in an constitutional manner.

99.  The Plaintiffs show that an actual controversy ripe for adjudication exists concerning the constitutional validity of the AWA, the USDA's regulations, and the USDA's enforcement of both.

100.     Either the AWA and its regulations are facially invalid, or the USDA's interpretation and application of them is arbitrary, capricious, contrary to constitutional right, in excess of its statutory authority, and/or without observance of the due process required by law. In either case, the USDA is depriving the Plaintiffs' of their property rights, without due process of law.

101.     The Plaintiffs seek a declaration from this Court that the failure to

provide a pre-suspension and/or post-suspension hearing is

unconstitutional, and clarifying the scope of the process that must be

afforded to the Plaintiffs prior to and after a temporary suspension of their

license.

102.     The Plaintiffs seek a further declaration from this Court holding

Defendants may not enter onto the premises with deadly weapons or

accompanied by agents in their employ or at their direction that have deadly

weapons unless exigent circumstances so justify the possible immediate use

of deadly force.

103.     Pursuant to the provisions of 28 U.S.C. § 2201 *et seq.*, a declaratory

judgment is necessary in order to settle and afford the Plaintiffs relief from

uncertainty and insecurity with respect to the parties' rights, and to prevent

further harm to the Plaintiffs.

## COUNT II

## PRELIMINARY AND PERMANENT INJUNCTION

104.  The Plaintiffs hereby incorporate and re-allege Paragraphs 1 through

103 of this Complaint as if fully set forth herein.

105. This Count II seeks injunctive relief pursuant to the Administrative

Procedure Act, 5 U.S.C. §§ 702 and 706, for the issues raised in Counts I and II,

*supra.* The Administrative Procedure Act waives sovereign immunity for claims

seeking non-monetary relief, and specifically provides that this Court shall compel

agency action unlawfully withheld or unreasonably delayed. This matter is ripe for

judicial review.

106. This Count II further seeks injunctive relief to prevent further deprivations of

constitutional due process.

107.  Acting under color of federal law, the USDA is knowingly enforcing the

AWA in an arbitrary, capricious, and unconstitutional manner in violation of the

Plaintiffs' Fifth Amendment and statutory right to due process. A fundamental principle

of federal law is that a federal agency must follow its own rules. *Morton v. Ruiz,* 415

U.S. 199, 233–235 (1974) ("[W]here the rights of individuals are affected, it is

incumbent upon agencies to follow their own procedures."). The failure of an agency to

follow its own regulations constitutes arbitrary and capricious conduct. *Boyd v.*

*Secretary of Agriculture,* 459 F. Supp. 418 (D.S.C.1978). The courts must overturn

agency actions which do not scrupulously follow the regulations and procedures

promulgated by the agency itself. *U.S. v. Heffner,* 420 F.2d 809, (4th Cir.1969).

*Simmons v. Block,* 782 F.2d 1545, 1550 (11th Cir.1986) . . . [I]t is clear . . . that agency

deviation from its own regulations and procedures may justify judicial relief. *Id.* at 1307.

108. The USDA is violating the Plaintiffs' Due Process Clause rights by

temporarily suspending their license without providing the Plaintiffs an opportunity for a hearing before or after the suspension.

109. The USDA's failure to provide a pre-suspension hearing is a violation of the Administrative Procedure Act and the Due Process Clause.

110. The USDA's failure to provide a post-suspension hearing is a violation of the Administrative Procedure Act and the Due Process Clause.

111. The escalation of enforcement based upon what is referred to as a "repeat violation" for violations that haven't been judicially determined to be repeats based upon subjective opinion without clear quantifiable standards is a violation of the Administrative Procedure Act and the Due Process Clause.

112. The suspension of a license based on factors not announced in a publicly available statute and/or regulation is a violation of the Administrative Procedure Act and the Due Process Clause.

113. Each of the above deprivations of constitutional and statutory due process have been present in instances affecting the Plaintiffs herein.

114. Each future suspension of the licensee without a prior hearing, would constitute a substantial, irreparable injury to the reputation of the Plaintiffs.

115. Unless the USDA is required to provide a pre-suspension hearing on any temporary suspension, the Plaintiffs are highly likely to suffer future irreparable harm.

116.  Unless the USDA is required to provide a post-suspension hearing on any temporary suspension, the Plaintiffs are highly likely to suffer future irreparable harm.

117.  A party seeking a preliminary injunction must demonstrate that: (1) he has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered absent an injunction; (3) the injury to the movant outweighs the injury the proposed injunction would cause to the opposing party; and (4) the proposed injunction would serve the public interest. *Johnston v. Tampa Sports Auth.*, 530 F.3d 1320, 1325 (11th Cir. 2008).

118.  Without the imposition of a preliminary injunction, the Plaintiffs will be irreparably harmed each time a temporary suspension is entered against them. The Plaintiffs have demonstrated a likelihood of success on the merits, there will be no cognizable harm to the USDA by requiring it to abide by its own rules and policies, and such an injunction will serve the public interest by providing fair notice of the interpretation applicable to the AWA.

119.  Accordingly, the Plaintiffs seek the entry of a preliminary and permanent injunction requiring the USDA, its managers, officers, agents, insepctors and its VMOs: (1) to implement procedures requiring a pre-suspension administrative hearing, upon reasonable notice, to address an alleged AWA violation prior to suspending a licensee; (2) to implement procedures allowing a prompt post-suspension

hearing, so a licensee can contest any finding that there was a violation of the AWA; (3) to develop procedures whereby a licensee can appeal to the courts following an adverse administrative finding; and (4) to prohibit inspectors or agents of the USDA or personnel in their employ or operating at their direction to carry firearms or possess other instruments of deadly force absent exigent circumstances that would reasonably warrant the same.

## COUNT III

## REVERSING AND SETTING ASIDE THE PRESENTLY IMPOSED
## 21 DAY SUSPENSION

120. The Plaintiffs incorporate and re-allege Paragraphs 1 through 119 of this Complaint as if expressly set forth herein.

121.  The APA provides that this Court shall "hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." 5

U.S.C. § 706(2).

122. The USDA's actions violate each of the foregoing subsections of 5 U.S.C. § 706.

123. Because the USDA's regulations neither establish nor permit an aggrieved party to bring an administrative complaint to contest a temporary suspension, each susipension constitutes final agency action for which review in this Court is appropriate under the Administrative Procedure Act.

124. The USDA did not provide the Plaintiffs with a pre-suspension hearing or other adequate procedural safeguards. This failure requires that the Court reverse and set aside the 21 Day Suspension that is currently being imposed.

125. The USDA did not provide the Plaintiffs with a post-Suspension hearing or other adequate procedural safeguards. This failure requires that the Court reverse and set aside the presently imposed 21 day suspension.

126. Upon information and belief, the USDA did not utilize and quantifiable standards in determining the period of the suspension. This failure requires that the Court reverse and set aside the 21 day suspension.

127. The USDA's failure to adhere to its own practices and procedures violates the Administrative Procedure Act and the Due Process Clause. This failure requires that the Court reverse and set aside the temporary suspension.

128. For the aforementioned reasons, the Plaintiffs request that the Court set aside

all previously imposed suspensions, including the one that is presently imposed.

**COUNT IV**

**ATTORNEYS' FEES AND EXPENSES OF LITIGATION**

129. The Plaintiffs incorporate and re-allege Paragraphs 1 through 128 of this Complaint as if expressly set forth herein.

130.   Pursuant to 28 U.S.C. § 2412, the Plaintiffs are entitled to an award of all attorneys' fees and expenses of litigation incurred in the prosecution of this matter.

**WHEREFORE**, the Plaintiffs petition this Honorable Court for the following relief:

(a) That Summons and Process issue as provided by law;

(b) That the Court issue a declaratory judgment regarding the USDA's failure to provide notice and hearing as averred in Count I;

(c) That the Court issue a declaratory judgment regarding the USDA's failure to adhere to its own policies and procedures as averred in Count and enjoin the USDA on a preliminary and permanent basis as averred in Count II;

(d) That the Court reverse and set aside the presently imposed 21 day suspensions as averred in Count III;

(e) That the Plaintiffs have judgment against the USDA for their attorneys' fees and expenses of litigation as averred in Count V; and

(g) All such other and further relief that the Court deems just and proper.


Respectfully submitted this 29th day of March, 2017.
**Rush Law Office**
**C. Richard Rush, Attorney**
*Attorney for Plaintiffs*

/s/ *C. Richard Rush*
C. Richard Rush
c.richardrush@gmail.com
Indiana State Bar No. 19545-22
421 West 1st Street
New Albany, IN  47150
812-945-6999 - phone
812-949-4003 – fax


/s/ Timothy L. Stark
Personally and as President of Wildlife In Need and Wildlife In Deed, Inc.
3320 Jack Teeple Road
Charlestown, IN  47111
wildlifeinneed@aol.com

**CERTIFICATE OF SERVICE**
This is to certify that I have this day served the foregoing document on each
of the persons or entities listed below in compliance with the FRCP:
U.S. Department of Agriculture
1400 Independence Avenue, S.W.
Washington, D.C. 20250
(via U.S. Mail CRRR)

United States Attorney's Office
Civil Process Clerk

(via U.S. Mail CRRR)

Attorney General of the United States
U.S. Department of Justice

950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001
(via U.S. Mail CRRR)

United States Attorney's Office

This 29th day of March, 2017.
/s/ C. Richard Rush
C. Richard Rush